IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

M.A.R.G., an adult

Petitioner,

v.

JULIO HERNANDEZ, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); DAVID VENTURELLA, Acting Director of Immigration Customs Enforcement ("ICE"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security ("DHS"); U.S. DEPARTMENT OF HOMELAND SECURITY; and TODD BLANCHE, Attorney General of the United States,

Respondents.

Civ. No. 6:26-cv-1669-AA

**OPINION & ORDER**

---

AIKEN, District Judge.

This case comes before the Court on a Petition for Writ of Habeas Corpus, ECF No. 1, filed by Petitioner M.A.R.G ("Petitioner"). Petitioner seeks her release from the physical custody of Respondents. The Court has determined the motion may be resolved without oral argument. For the reasons set forth below, the Petition is GRANTED.

## BACKGROUND

Petitioner is a citizen of Mexico, Resp. Ex. B at 2, ECF No. 15-4, and she does not speak, read or write English, M.A.R.G. Decl. ¶ 4, ECF No. 22. She came to United States on September 15, 2021, but she was arrested and subsequently removed to Mexico on September 16, 2021. M.A.R.G. Decl. ¶ 2; Resp. Ex. B at 2. One June 13, 2023, Petitioner was arrested while attempting to enter the United States. Resp. Ex. B at 2. Petitioner's order of removal was reinstated, but Petitioner claimed a fear of returning to Mexico. *Id.* She was released into the United States on an Order of Supervision ("OSUP") pending a Reasonable Fear Interview ("RFI"). M.A.R.G. Decl. ¶ 2; Resp. Ex. B at 2.

Petitioner was given a Form M-488 in Spanish, which stated in relevant part that Petitioner had been ordered removed, had requested asylum, and that "[Petitioner] may be detained both before and after the [RFI] if the INS determines that it is appropriate to detain you." Resp. Ret. at 4.

Petitioner was scheduled for an RFI in February 2026 but that was rescheduled at her attorney's request. M.A.R.G. Decl. ¶ 5. On August 5, 2026, Petitioner received notice of her rescheduled RFI, which was to be conducted on August 10, 2026, at the Immigration and Customs Enforcement ("ICE") office in Eugene, Oregon.

Petitioner attended the RFI in person, but the RFI itself was conducted over the phone by an asylum officer from the United States Citizenship and Immigration Services. ("USCIS"). M.A.R.G Decl. ¶ 10. Petitioner's attorney was on the call as well,

but not physically with Petitioner. *Id.* A Spanish translator was also on the call. *See* Resp Ex. G at 2. About an hour after the RFI concluded, USCIS called back into the Eugene ICE Office and issued a decision that found that Petitioner did not qualify for asylum. Resp. Ex. G at 1; M.A.R.G. Decl. ¶ 11. This decision was explained to Petitioner in Spanish, and Petitioner requested a review of that decision by an Immigration Judge ("IJ"). *Id.* at 2.

After USCIS issued its decision, Respondents detained Petitioner and the asylum officer ended the call, which cut off Petitioner's attorney. M.A.R.G. Decl. ¶ 12. To detain Petitioner, Respondents had to revoke her OSUP, citing 8 C.F.R. § 241.4(l) which allows for the revocation of an OSUP when "[t]he purposes of release ha[d] been served." Resp. Ex. I at 1.

After being taken into custody, M.A.R.G was provided with ICE Form 71-09, "Notice of Revocation of Release." Resp. Ex. I. The document was in English and was not translated into Spanish. M.A.R.G Decl. ¶ 15.

Afterwards, an officer conducted an "informal interview" with Petitioner, as referenced on the Form 71-09, which is an opportunity for a person to "contest the reasons for the OSUP revocation." Resp. Ret. at 5. The interview consisted of Petitioner writing on a Form 71-090 in Spanish. Resp. Ex. J; M.A.R.G. Decl. ¶ 16. No one read the form to Petitioner in Spanish, and no one explained anything about the interview or process to Petitioner, other than telling her to write anything she wanted to say. M.A.R.G. Decl. ¶ 16.

The Form 71-090 was signed by an ICE officer, who attested that:

> I conducted an initial informal interview of the detainee listed above in order to afford the alien an opportunity to respond to the reasons for revocation of his or her order of supervision stated in the notification letter. At the interview, the alien made the following oral response regarding the reasons for revocation[.]

Resp. Ex. J.

After the informal interview, Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC"). Resp Ret. at 5. On August 20, 2026, an IJ at the Tacoma Immigration Court affirmed the USCIS determination that Petitioner did not have a reasonable fear. Resp Ex. L.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).

## DISCUSSION

### I. JURISDICTION

The Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" before considering a matter on the merits. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Respondents challenge the Court's jurisdiction in this matter, citing 8 U.S.C. § 1252(g). Resp. Ret. at

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g).

Section § 1252(g)'s jurisdiction-stripping provision is interpreted narrowly and is applied to only "three discrete actions": the "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am. Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("AADC") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). The Supreme Court rejected any reading of the statute that would cover "the universe of deportation claims," *id.*, and cautioned against interpreting § 1252(g) with "uncritical literalism" to sweep in any claim that can technically be said to "arise from" these three actions. *Jennings v. Rodriguez*, 583 U.S. 281, 293-95 (2018).

Courts have "distinguished between challenges to ICE discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not." *Ceesay v. Kurzdorfer*, 781 F. Supp.3d. 137, 152 (W.D.N.Y. May 2, 2025).

Here, Petitioner is challenging whether Respondents followed the required procedures in revoking Petitioner's OSUP and her subsequent detention. Section 1252(g) is no bar to such a challenge.

## II. PETITIONER'S CHALLENGE

The Court will focus on Petitioner's allegation that Respondents violated Petitioner's Fifth Amendment right to due process regarding the revocation of her OSUP. Petition ¶¶ 61-65.

Courts in the Ninth Circuit consider procedural due process claims under the three-part framework articulated in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *Ramirez Tesara v. Wamsley*, 800 F. Supp.3d 1130, 1135 (W.D. Wash. 2025).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335.

Considering the first factor, freedom from government custody, detention, or other forms of physical restraint "lies at the heart of the liberty" protected by the Fifth Amendment Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). However, a noncitizen's private interests will be "diminished by the fact that he is subject to an order of removal from the United States." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022); *see also Saechao v. Scott*, Case No. 2:26-cv-00548-TMC, 2026 WL 626765, at *4 (noting that "a noncitizen's liberty interest in remaining in the community is reduced when they are subject to a final, executable order of removal.").

Here, Petitioner is subject to a removal order from 2021 that was reinstated in 2023. On the other hand, Petitioner is detained and in Respondents physical custody, which, under *Zadvydas,* means she has been deprived of the "heart of liberty." The Court finds that the first factor is neutral.

The second *Matthews* factor considers the risk of erroneous deprivation of Petitioner's interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards. "The fundamental requisite of due process of law is the opportunity to be heard." *U.S. v. Rivera-Valdes*, 157 F.4th 978 (9th Cir. 2025) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). The right to be heard necessarily requires notice that is "of such nature as reasonable to convey the required information." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

One of the safeguards is a notice of revocation of an OSUP to inform the detainee the reason for revocation. 8 C.F.R. § 214.4(l). Here, the notice was in English, and no translation was made in writing or orally. That is not meaningful notice; it is no notice at all.

Another safeguard is the "informal interview." 8 C.F.R. 241.4(l)(1); *see also*, *Ceesay*, 781 F. Supp. 3d at 163. While the interview is meant to be informal, it is supposed provides the immigrant the opportunity to be heard regarding the revocation of an OSUP and to present arguments and evidence challenging the basis for the revocation. Here, Petitioner's opportunity to be heard was illusory. No meaningful "interview" was conducted, as the ICE agent overseeing this process did

not explain the process or the form to Petitioner and no claim is made that the "interviewing" officer spoke or read Spanish.

Because Petitioner did not know the purpose of the interview, she was not given notice. Because Petitioner communicated in a language the interviewer did not know, she was not given an opportunity to be heard.

Respondents argue that because the Form M-488 Petitioner was given in 2023 was in Spanish, she was on notice. Resp. Ret. at 10,11. That form stated that Petitioner was detainable before her RFI, and that if a negative determination was made, she would also be detainable. Resp Ex. E.

That argument misses the mark. Federal regulations are clear that notice is to be given "upon" revocation. 8 C.F.R 214.4(l) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole."). A conditional warning given three years prior to revocation cannot meet the requirements of the regulation.

In sum, Respondents had clear procedures for revoking an OSUP but did not follow them in a way that comports with basic principles of due process because they failed to actually notify Petitioner of the reason for revocation in a language she could understand and failed to allow her an opportunity to be heard regarding the revocation in a language that the interviewer could understand. The Court finds the second factor favors Petitioner.

The final factor concerns the government's interests and the fiscal and administrative burdens of additional or substitute procedures. The government has

a well-established interest in the enforcement of immigration laws. *Rogriguez Diaz*, 53 F.4th at 1208 ("Enforcement of our immigration law serves both a domestic law enforcement and foreign relations function," and courts "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." (internal quotation marks and citation omitted)).

But the government also has an interest in, and cannot be burdened by, following their own regulations. *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267 (D. Or. Aug. 21, 2025) (citing *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003)); *see also, Ceesay* 781 F. Supp.3d. at 164,165; and *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017) ("[ICE] . . . must follow its own regulations, procedures, and prior written commitments[.]")) The Court finds the third factor favors Petitioner.

**CONCLUSION**

For the reasons set forth above, Petitioner's Petition for the Writ of Habeas Corpus is GRANTED. The Court ORDERS Respondents to immediately release Petitioner M.A.R.G. from custody, subject to the conditions of her preexisting Order of Supervised Release.

It is so ORDERED and DATED this 1st day of September 2026.

s/ Ann Aiken
ANN AIKEN
United States District Judge